UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

WILLIAM FAUCI,

Petitioner-Defendant,

04 CV      (ERK)
01 CR. 1 (ERK)

-against-

THE UNITED STATES AND
BUREAU OF PRISONS,

Respondent.

--------------------------------------------------------X

**PLEASE TAKE NOTICE** that the defendant, at the U.S. Courthouse, 225 Cadman Plaza East, Brooklyn, NY, on the 11th Day of February, at 9:30 a.m., or at a time set by the Court, will request the following relief:

II. An order that petitioner be deemed eligible for community confinement under an older policy of the Bureau of Prisons applicable at the time of petitioner's offense, 28 U.S.C. 2255;

and any other relief this Court deems just and proper.

Yours, etc.

February 1, 2004

Labe M. Richman
Attorney at Law
305 Broadway, Suite 100
New York, NY 10007
(212) 227-1914
Fax 267-2129
E-mail: Labe@LabeRichman.com
Web: www.LabeRichman.com



LAW OFFICE
# LABE M. RICHMAN
**ATTORNEY AT LAW**
305 BROADWAY, SUITE 100
NEW YORK, NY 10007
TEL (212) 227-1914
FAX (212) 267-2129
E-MAIL: LABE@LABERICHMAN.COM
WEB SITE: HTTP://WWW.LABERICHMAN.COM

February 2, 2004

Honorable Edward R. Korman
U.S. District Judge
Federal Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

> Re:  United States v. William Fauci, 01 Cr. 1336;
>      Half-way house eligibility and recommendation;
>      Employment location

Dear Judge Korman:

I have been asked by defendant's attorney, John Murphy, Esq., and Mr. Fauci's family to write to the Court about three issues related to this defendant's incarceration and supervised release. The Court sentenced defendant to fifteen months in jail and three years of supervised release on false statement and money laundering convictions.

I am writing to request the following: (1) a recommendation to the Bureau of Prisons that it place defendant in community confinement or house arrest when he comes within 6 months of his release date; (2) an order, that in considering defendant's eligibility for community confinement, the Bureau of Prisons not use a recent policy, ruled illegal by Judge Glasser and other district courts, that defendants are not eligible for such confinement when they are within 6 months of their release date; [1] and (3) an order

---

[1] To give the Court jurisdiction to issue such an order, I am filing a motion pursuant to 28 U.S.C. 2255 for a writ of mandamus. In this letter, I declare, under penalties of perjury, that the factual allegations are true to the best of my knowledge.



to the Probation Department, that during the time of his community confinement and supervised release, defendant is allowed to return to work at his struggling restaurant which he needs to resuscitate. I have attached proposed orders and a recommendation for the Court's consideration at the end of this letter.

**I. The Court should recommend that defendant be released to community confinement or house arrest when he comes within six months of his release date.** This case, to date, has punished the defendant severely. He was on house-arrest for sixteen months and he did not receive jail-time credit for that time nor could he, under present case law, receive a departure for that punitive bail condition. More important, as made clear at the sentencing, as a result of the timing of the house arrest, defendant was unable to spend time with his dying father who passed away during that time. Additionally, defendant's restaurant suffered dramatically as a result of his absence during his house arrest. [2]

Of course, as a result of his present incarceration this business is suffering even further. See, Declaration of his wife, Tara Fauci, attached as Exhibit A. His wife, who did not establish or run the business in the first instance, is trying to manage the restaurant as she takes care of two very young children. [3] This arrangement is obviously not working out sufficiently well for the business to survive much longer. As was made sufficiently clear at the sentencing, defendant's presence is needed for the business to survive.

---

[2] For a great deal of the time, defendant was not allowed to work at the restaurant, and when he was allowed, he was required to leave by 3:00 p.m., which, not surprisingly, did not allow him to sufficiently manage his business.

[3] At the time of the PSR, the children's ages were two and seven months, PSR para. 111, p. 27.

Also, although defendant established and managed the restaurant, the title to the restaurant was transferred to his wife.

2



We do not believe that the proposed recommendation will affect the factors of deterrence and punishment as enumerated in 18 U.S.C. § 3553. As noted above, defendant was on house arrest for 16 months for which he received no credit or departure; defendant's father died during this period and defendant was unable to spend time with him in these last months of life; defendant's business suffered terribly during this period and during his incarceration, and defendant is presently serving a jail sentence for this offense. Accordingly, defendant has been punished and we respectfully request that the Court recommend to the Bureau of Prisons that defendant be placed in community confinement or house arrest, as soon as he becomes eligible for said placement. [4]

**II. The Bureau of Prisons, in this case, should not abide by its new policy of only allowing community confinement or house arrest when a defendant has finished all but ten per cent of his sentence.** It has long been a practice of the bureau of prisons to allow inmates to be placed in community confinement up to six months prior to their release date. See, Cioffoletti v. Federal Bureau of Prisons, 03 CV 3220 (ILG) p. 1 (attached as Exhibit D). However, the Bureau of Prisons has attempted to limit community confinement to a period constituting the last ten per cent of confinement. Judge Glasser, Judge Wood and other district courts have ruled that this policy is illegal under the *ex post facto* clause, the Administrative Procedures Act (5 U.S.C. §551), and equitable estoppel. Id. and citations contained therein; Greenfield v. Menifee, 03 CV 8205, (KMW)(SDNY).

Indeed, at the time that defendant committed the crime (1997-2000), the old practice was in force. This has *ex post facto* clause implications. Accordingly, the Court should issue an order that defendant be considered for community confinement or house arrest under the policy in effect at the time of his crime -- that is, when he comes within six months of his release date.

---

[4] We use the term "recommend" because it is still within the purview of the BOP, in most circumstances, to determine when within certain parameters, the defendant will be placed in community confinement.

**III. The Court should issue an order that the Probation Department allow defendant to return to his restaurant to work when he leaves jail.** At the time of defendant's sentencing, defense counsel Murphy requested this relief and, apparently not against the idea, the Court questioned why defendant would not be allowed to return to his restaurant (S. 10).[5] Since Moore did not have an answer to that question, the issue, apparently, was not resolved. [6]

Recently, however, the Newark, New Jersey, Probation Office, in a letter dated November 1, 2003, (attached as Exhibit C) has written defendant's facility to indicate that he will not be allowed to work at his restaurant. The letter offers two reasons. First, defendants are generally not allowed to travel outside their district of residence and supervision. Defendant will live and be supervised in New Jersey and the restaurant is located in Staten Island, New York. Second, since defendant's crime (where he placed a non-employee on his restaurant payroll) revolved around his business, he should not be allowed to resume his employment at that restaurant. [7]

However, as should not be a surprise to the Court, defendant's absence from his business will inevitably lead to its demise. Indeed, this will lead to a substantial economic hardship because he mortgaged his home to keep the business afloat, going in debt up to 120,000 dollars. Considering the substantial investment of time and money made by the defendant's family, it would be overly onerous to destroy his business and investment because of the reasons noted above. And, because the business is in bad shape at this time, it cannot be sold for an adequate price.

---

[5] Numbers in parentheses after "S." refer to pages of defendant's sentencing transcript, dated March 7, 2003, attached as Exhibit B.

[6] The transcript, attached, indicates that either the Court was cut off at the time it was discussing the issue, or the last portion of the Court's remark was not heard by the court reporter.

[7] The allegation was also made at defendant's sentencing that co-defendants, at times, congregated at the restaurant.

4



The rule that a probationer or supervisee must only travel within his district of residence is often overruled by a sentencing court in the tri-state area, where a myriad of individuals, this counsel included, travel among several districts every day. Not only do the rehabilitative benefits of single district travel not make sense in a tri-state metropolitan area like this, but such benefits do not outweigh the significant detriment to this family from the demise of their business -- a business they have spent a great deal of money on recently.

Similarly, the supposed benefits of keeping defendant away from a restaurant where the crime occurred, do not outweigh the destruction of that business. The location or kind of business in which the defendant participates will have little or no effect on whether he continues to effectuate money laundering. It is impossible to prevent all crimes by supervisees, however strict the supervision. Indeed, even individuals in jail commit crimes. To attempt the impossible with restrictions that destroy businesses and the finances of the family is both counterproductive and ineffective rehabilitation and protection of the public. Here, the Court has sentenced defendant to jail time, and that punishment along with, *inter alia*, his lengthy period of house arrest while out on bail, will hopefully deter future conduct. Restrictions which cause direct harm to the functioning of the family and the assets and income which support that family are inappropriate when they cannot, in any event, prevent future crime.

Of course, the Probation Department will still require that defendant not associate with criminals or alleged criminal associates, and he, along with his co-defendants, will still be forbidden from meeting at his restaurant or anywhere else for that matter. Indeed, it is not the location of the restaurant which is truly at issue, but the meeting between co-defendants and other known criminals which is important. That is why a restriction keeping him away from the restaurant has little or no effect on him leading a clean lifestyle.

Accordingly, this Court should order the Probation Office to authorize his employment at the family's pizza restaurant in Staten Island.

5

I thank the Court for its attention to these three requests.

Respectfully submitted,

Labe M. Richman

cc:    AUSA Greg Andres

John C. Miner, Warden
FCI - Fairton

James Bruce, Case Manager
FCI - Fairton

Senior USPO Thomas J. Stone

6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

UNITED STATES OF AMERICA                          01 CR 1336 (ERK)

                                                  RECOMMENDATION

–against–


WILLIAM FAUCI

------------------------------------------------------X

IT IS HEREBY RECOMMENDED that the U.S. Bureau of Prisons place defendant in
community confinement or house arrest as soon as he is eligible.


Dated:


                                        _____
                                        HON. EDWARD R. KORMAN, USDJ



Labe M. Richman
Attorney at Law
305 Broadway, Suite 100
New York, NY 10007
(212) 227-1914



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

UNITED STATES OF AMERICA                    01 CR 1336 (ERK)

                                                         ORDER

–against-


WILLIAM FAUCI


-------------------------------------------------------X

IT IS HEREBY ORDERED that the U.S. Bureau of Prisons consider defendant for
placement in community confinement or house arrest under the older policy whereby
inmates are eligible for placement in community confinement or house arrest when they
come within six months of their release date.



Dated:


                                         _____
                                         HON. EDWARD R. KORMAN, USDJ



Labe M. Richman
Attorney at Law
305 Broadway, Suite 100
New York, NY 10007
(212) 227-1914



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X

UNITED STATES OF AMERICA                        01 CR 1336 (ERK)

                                                ORDER

--against-

WILLIAM FAUCI

------------------------------------------------------X

IT IS HEREBY ORDERED that the Probation Department allow defendant to work at
the family's pizza restaurant in Staten, Island, New York and that the defendant be able
to travel to that district for his work.

Dated:

                        _____
                        HON. EDWARD R. KORMAN, USDJ

Labe M. Richman
Attorney at Law
305 Broadway, Suite 100
New York, NY 10007
(212) 227-1914

Exhibit A

1/29/2004

Honorable Judge Korman.

I hereby declare under oath (law 28 USC Section 1746) that the following is true
I understand fully the penalties of perjury

I am writing this letter to explain hardship on my business that has resulted due
to my husband's incarceration.  Due to William's absence (which has been about 6
months) I have been struggling to operate and save my business    Although I am the
owner, my husband was the manager/pizza man/cook and took care of all the day-to-
day tasks.  My husband tried to get things in order before he left but without his
presence the restaurant has seen a decline   I have been trying to manage the place
but it is has been hard while trying to raise two small children

Last January we refinanced our home and put $80,000 back into the restaurant
to stop foreclosure. I fear that the same will happen again  Since August I have
accumulated $40,000 in debt, of which $30,000 is unpaid rent. The future looks bleak.
I have been trying to sell the restaurant but due to the circumstances the marketing of
the place has been difficult and it has been hard to get any serious buyers.

Sincerely,
Tara Fauci

Exhibit B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
-------------------------------X        Docket#
UNITED STATES OF AMERICA        :        01-CR-1336
                                :
     - versus -                 :        U.S. Courthouse
                                :        Brooklyn, New York
WILLIAM FAUCI,                  :
              Defendant         :        March 7, 2003
-------------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
BEFORE THE HONORABLE EDWARD R. KORMAN
UNITED STATES CHIEF DISTRICT JUDGE

A    P    P    E    A    R    A    N    C    E    S:


For the Government:          **Roslynn R. Mauskopf, Esq.**
                             United States Attorney

                    BY:      **Greg Andres, Esq.**
                             Assistant U.S. Attorney
                             225 Cadman Plaza East
                             Brooklyn, New York  11201


For the Defendant:           **John Murphy, Esq.**
                             60 Bay Street
                             Staten Island, N.Y. 10304




Official Transcriber:        **Rosalie Lombardi**
                                  L.F.


Transcription Service:       **Transcription Plus II**
                             823 Whittier Avenue
                             New Hyde Park, N.Y.  11040
                             (516) 358-7352


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

**Proceedings**                                                9

1    to put him -- to give him a no show job.   Mr.

2    Fauci has had a longstanding relationship with

3    his co-defendants.   They used that restaurant

4    as a staging ground to plan criminal activity

5    and this is hardly his first encounter with

6    the law.

7           MR. MURPHY:   Judge, with respect to

8    the restaurant --

9           THE COURT:   We don't have to get

10   involved in that.   I just have some vague

11   recollection that you represented somebody who

12   owned a restaurant who was trying to get out

13   on bail.

14          MR. MURPHY:   This case.

15          THE COURT:   But I see that he -- ius

16   this correct that he was released four days

17   after?

18          MR. ANDRES:   Mr. Murphy was trying to

19   get -- the bail conditions originally allowed

20   that Mr. Fauci couldn't go to the restaurant.

21          THE COURT:   Oh, I see.   I understand.

22   So, he was out.   It was just --

23          MR. MURPHY:   He was on home arrest all

24   of this time.

25          THE COURT:   I understand.

Transcription Plus II          Rosalie Lombardi

Proceedings                    10

1        MR. MURPHY: And since he wasn't a

2    risk of flight, we argued over and over again

3    that he --

4            THE COURT: I understand.

5        MR. MURPHY: -- the bracelets should

6    be taken off.

7            THE COURT: I understand.

8        MR. ANDRES: And at some point, he was

9    allowed to go back and operate. After his

10   guilty plea, Judge Gold amended his bail

11   conditions to allow him to go back to the

12   restaurant.

13           THE COURT: Okay.

14       MR. MURPHY: Judge, I would just note

15   that I'm also asking, number one, that you

16   allow him to go back and work that restaurant

17   when he finishes his sentence. That is the

18   livelihood. That is what he does.

19           THE COURT: Well, what would prevent

20   him that I would have to give him permission?

21       MR. MURPHY: I don't think anything

22   would. I'm just -- I want to make you aware

23   that that's what he is going to do.

24           THE COURT: I'm not going to do --

25       MR. MURPHY: And I'm asking you after

Transcription Plus II          Rosalie Lombardi

**Proceedings**                                11

1    -- if you're going to permit him to surrender

2    to a designated facility, that you allow him

3    to take this bracelet off and remove that home

4    arrest today, so he can get the financial

5    affairs of that small restaurant in order, so

6    that his wife and two young children can

7    survive financially while he's in jail.

8            THE COURT:  Well, why does he need to

9    wear the -- he's not going anywhere?  Why does

10   he need to wear this bracelet?

11           MR. ANDRES:  Judge, at the time of

12   the --

13           THE COURT:  No, I am talking about his

14   application now.  We don't have to go over

15   whether he has to wear it for --

16           MR. ANDRES:  Well, just as a legal

17   matter, having been sentenced doesn't change

18   the circumstances with respect to your case

19   such that it would allow the Court to modify

20   the bail.

21           If there's an issue with respect to

22   his bail, then it necessarily brings up

23   everything that's been litigated previously

24   with respect to why those conditions were

25   imposed in the first place.

Transcription Plus II          Rosalie Lombardi

39

## C   E   R   T   I   F   I   C   A   T   E

I, ROSALIE LOMBARDI, hereby certify
that the foregoing transcript of the said
proceedings is a true and accurate transcript
from the electronic sound-recording of the
proceedings reduced to typewriting in the
above-entitled matter.

I FURTHER CERTIFY that I am not a
relative or employee or attorney or counsel of
any of the parties, nor a relative or employee
of such attorney or counsel, or financially
interested directly or indirectly in this
action.

IN WITNESS WHEREOF, I hereunto set my
hand this __27th__ day of __August__ , 2003.

*Rosalie Lombardi*

Rosalie Lombardi
Transcription Plus II

Transcription Plus II          Rosalie Lombardi

Exhibit C

PROBATION OFFICE
DISTRICT OF NEW JERSEY

JOSEPH J. NAPURANO
CHIEF PROBATION OFFICER

DEPUTY CHIEF PROBATION OFFICERS                                           SUPERVISION UNIT
ERIC K. SNYDER                                                           20 WASHINGTON PLACE
FRANK J. IOCHER                                                              6TH FLOOR
RICHARD J. GALLUZZO                          November 1, 2003           NEWARK, NJ 07102-3172
                                                                            (973) 645-6151
                                                                          FAX: (973) 645-2155

                                                          718-448
                                                              -8685

     Jonathan C. Miner, Warden
     Federal Correctional Institution
     – Satellite Camp
     Post Office Box # 280
     Fairton, New Jersey 08320
     Attention: James Bruce, Case Manager

                                        RE: FAUCI, William
                                        : aka as ?
                                        Register = # 67302-053
                                        PRERELEASE INVESTIGATION
                                        / PLAN NEEDS MODIFICATION

Dear Mr. Miner:

We have investigated the post-release plan of the above-named offender. The undersigned officer
interviewed Fauci's wife Tara in her home and an inspection of the residence, located at 45 Thomas Street
in Old Bridge, New Jersey, was conducted. Mrs. Fauci approves of her husband's plan to live with her
and their children following his release from the Bureau of Prisons. The residential portion of the inmate's
plan is acceptable.

Fauci's employment plan to work at the Village Café, 77 Richmond Hill Road, Staten Island, New York,
is denied. This matter originated in the Eastern District of New York and the offender has requested
supervision be conducted by the District of New Jersey based upon his proposed residence in this state.
Offenders supervised in this district are restricted from traveling outside of the district. Therefore,
employment should generally be secured within the confines of New Jersey.

Specifically in this matter, Fauci conducted illegally activity which was furthered while he worked at the
Village Café. In addition, the offender pled guilty False Statements, a felony, by representing that a
codefendant worked in his restaurant when in fact, he did not. As noted in the Presentence Report, Fauci
and his former partner/codefendant Francis Costanza transferred their interests in the business to other
family members. Employment outside of the District of New Jersey (and specifically at the Village Café)
presents a significant risk that the offender will re-offend. Therefore, his employment plan is denied.

Please contact the undersigned officer directly at 973/645-4590 if there are any questions. We ask that
you indicate Fauci's revised plan for employment or if he wishes to live and work in the Eastern District
of New York.

                                   Sincerely,

                                   Thomas J. Stone
                                   Senior U.S. Probation Officer

Exhibit D

LOIS Federal District Court Opinions

CIOFFOLETTI v. FEDERAL BUREAU OF PRISONS, (E.D.N.Y. 2003)

JOHN CIOFFOLETTI, Petitioner, -against- FEDERAL BUREAU OF PRISONS, et

al., Defendants

03 CV 3220 (ILG)

United States District Court, E.D. New York

November 6, 2003

## MEMORANDUM AND ORDER

I. LEO GLASSER, Senior District Judge

On March 14, 2002, John Cioffoletti (the petitioner), was sentenced
to a term of imprisonment of 24 months, the Court having downwardly
departed pursuant to U.S.S.G. § 5H1.6 from a guideline range of
51-63 months. A three year term of supervised release was directed
to follow. A recommendation was made that the Bureau of Prisons (BOP)
place him in a shock incarceration program in accordance with
18 U.S.C. § 4046. That recommendation was rejected by the BOP for the reason
that his history of steady employment made that program inappropriate.
The government did not oppose his application to be permitted to
voluntarily surrender on or before May 6th, 2002, to the facility to
which he would be designated and it was granted. On May 6th, he
surrendered to the Satellite Camp at FCI Otisville.

Consistent with the practice, long observed, of allowing eligible
inmates to serve up to the last six months of their sentence in a
Community Correction Center (CCC) regardless of the term of that
sentence, the petitioner's Unit Manager, on November 14th, 2002,
recommended in writing that he be permitted to serve the last 5-6 months
of his sentence in a CCC.
Page 2

In a Memorandum Opinion for the Deputy Attorney General dated December
13th, 2002, M. Edward Whelan III, Principal Deputy Assistant Attorney
General, Office of Legal Counsel (OLC), concluded that "When a federal
offender receives a Zone C or Zone D sentence of imprisonment, section
3621 and section 3622 of title 18 do not give BOP general authority to
place the offender in community confinement from the outset of his
sentence. Nor do they give BOP general authority to transfer him from
prison to community confinement at any time BOP chooses during the course
of his sentence." The justification for his conclusion is his opinion
that the statutory authority of the BOP to implement sentences of
imprisonment must be congruent with the United States Sentencing
Guidelines, more specifically, § 5C1.1(d)(2) and that community
confinement is not imprisonment as prescribed in that guideline. Stating
the reasoning upon which the opinion is bottomed as succinctly and
clearly as I can, it is as follows: U.S.S.G. § 5C1.1(d)(2) provides
that the minimum term of a Zone C sentence, i.e., one for an offense
level of 11 or 12, "may be satisfied by —

(1) a sentence of imprisonment; or

(2) a sentence of imprisonment that includes a
term of supervised release with a condition that
substitutes community confinement or home
detention . . . provided that at least one-half
of the minimum term is satisfied by imprisonment."

The OLC's reading of that guideline is that "community confinement" is
not "imprisonment." If, for example, a Zone C sentence of imprisonment
for 8 months is imposed by a judge who recommends that the entire
sentence be served in a CCC. it would be unlawful for the BOP to adopt
that recommendation.
Page 3

One week after the issuance of that Memorandum, on December
20th, 2002, the then Director of the BOP sent her own
memorandum to federal judges informing them that under a new BOP policy
"defendants sentenced thereafter to a term of imprisonment would never be
committed directly to a CCC regardless of the sentencing judges'
recommendation. That Memorandum gave notice that the new policy will be
applied prospectively, except that inmates designated to a CCC who, as of
December 16th, 2002, had more than 150 days remaining to
serve on their prison terms, will be re-designated to a prison. The
Memorandum provided no rationale for applying the new policy
retroactively to inmates having more than 150 days to serve nor was one
offered by the government when asked during the argument of the motion
described hereafter.

On December 30th, 2002, the petitioner was advised in a
Memorandum from Respondent Menifee, the Warden of FCI Otisville, that CCC
designations would be limited to the last 10% of an inmate's term, not to
exceed six months. That Memorandum was obviously in response to the OLC's
Memorandum which, in turn, reflected what it believed to be mandated by
18 U.S.C. § 3624(C). That statute, captioned "Pre-Release
Custody" provides in relevant part that "The Bureau of Prisons
shall, to the extent practicable, assure that a prisoner serving a term
of imprisonment, spends a reasonable part, not to exceed six months, of
the last 10 per centum of the term to be served under
conditions that will afford the prisoner a reasonable opportunity to
adjust to and prepare for the prisoner's re-entry into the community. The
authority provided by this subsection may be used to place a prisoner in
home confinement." (emphasis added, the significance of which
will be discussed below).
Page 4

That Memorandum, in essence, advised the petitioner that he would not
be released to a CCC in July, 2003, as recommended by his Unit Manager,
but that he would have to wait instead to November, 2003, which would be
2 months (10% of 24 months) before the expiration of his term.

On July 1st, 2003, the petitioner obtained an Order
directing the defendants to show cause why an Order should not be issued
pursuant to Rule 65, Fed.R. Civ. P., compelling the defendants to
disregard the "new so-called 10% Rule" and to immediately determine his
eligibility for pre-release designation to a CCC in accordance with the
pre-December 20th, 2002 policies and practices of the Bureau of Prisons.

The relief which the petitioner seeks is, he claims, warranted by a
variety of viable and applicable legal bases, namely,

28 U.S.C. § 2255; ex post facto and due process constitutional violations;
violation of the Administrative Procedure Act, 5 U.S.C. § 551 et
seq.; equitable estoppel; mandamus and declaratory judgment.

## DISCUSSION

### I. THE OLC MEMORANDUM FALLOUT

A spate of litigation followed almost immediately upon the issuance of
the OLC Memorandum. The effect (without characterizing it) that
Memorandum had upon the lives of those already sentenced will be
dramatically portrayed by a brief statement of the facts in just one of
many illustrative cases,

Shawna Lyn Culter pleaded guilty to one count of uttering a forged
security. Her adjusted offense level fell within "Zone C" of the U.S.S.G.
and she faced a sentence of 10 16 months. Shawna was sexually abused by
her father at a young age and was diagnosed with Bipolar Disorder. At the
time of her sentence and for some time before, she was
Page 5
treated for that condition, had begun working as a member
relation specialist at a library network; was saving part of her salary
to pay restitution; had become an active member of her church, where she
was serving as a mentor to younger members and was participating in
various charitable projects. Every indication pointed to a process of
turning her life around.

Recognizing and seeking to encourage her progress, the Court fashioned
a sentence that combined punishment while simultaneously enabling the
continuation of the strides she was making toward rehabilitation. Relying
upon a long-standing policy of the Bureau of Prisons honoring judicial
recommendations for placement of offenders whose Guidelines fell into
Zone C, the Court sentenced Shawna to 12 months imprisonment with a
strong recommendation that she be placed in a CCC. The Bureau of Prisons
had assured the Court that its recommendation would be followed, and on
June 10, 2002, Shawna began serving her sentence in a CCC. Following the
issuance of the OLC Memorandum, Shawna, having 174 days left to serve,
was notified by the Bureau of Prisons that she would be moved into a
federal prison on or before January 27, 2003. The Court's sentence, in
reliance upon the Bureau of Prisons' assurance, was designed to permit
Shawna to continue with therapy, to continue to work, to continue to
participate in church activities and to pay restitution. The promise of
Shawna's rehabilitation and the resumption of her place in society by the
Bureau of Prisons' implementation of the OLC Memorandum requires no great
leap of imagination. See Culter v. United States,
241 F. Supp.2d 19 (D.C.D. Ct. 2003).

Cases in which the facts are similarly if not more compelling are, for
example: Iacaboni v. United States, 251 F. Supp.2d (D. Ct.
Mass. 2003); Ashkenazi y. Attorney
Page 6
General of the United States, (D.C.D. Ct. 2003); Howard
v. Attorney General Ashcroft, 248 F. Supp.2d 518 (D. Ct. M.D. La.
2003); Byrd v. Moore, 252 F. Supp.2d 293 (D. Ct. W.D. N.C.
2003); Tipton v. Federal Bureau of Prisons, 2003 WL 21196487
(D.Md. 2003); United States v. Serpa, 251 F. Supp.2d 988 (D.
Mass. 2003).

### II. THE LEGAL ANALYSIS OF THE OLC MEMORANDUM

The cases cited above, found the conclusion of the OLC Memorandum and the analysis of the statutes upon which that conclusion was based, wanting on a variety of grounds.

Because I find the conclusions reached and the reasoning which led to those conclusions compelling, I adopt and follow them. To do more would be an exercise in creative re-writing and a pretense of originality.

For the reasons extensively discussed in the above cited cases, which are hereby incorporated by reference, the Bureau of Prisons is hereby directed to transfer the petitioner to a Community Corrections Center forthwith.

A more expansive and detailed Memorandum and Order will follow;

SO ORDERED.

Page 1

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved